**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ILLINOIS**

TOM GLODO and WILLIAM
MURDOCH, individually and on behalf
of all others similarly situated,

             Plaintiffs,

v.

CPG INTERNATIONAL, INC. and
AZEK BUILDING PRODUCTS, INC.,

             Defendants.

_____/

CASE NO.:   3:13-cv-00402-WDS-SCW

**JURY TRIAL DEMANDED**

**CLASS ACTION COMPLAINT**

Plaintiffs, Tom Glodo and William Murdoch, by and through their undersigned counsel, on behalf of themselves and all other persons and entities similarly situated, sue Defendants, CPG International, Inc. and Azek Building Products, Inc., and for their Complaint allege, upon information and belief and based on the investigation to date of their counsel, as follows:

**INTRODUCTION AND SUMMARY OF ACTION**

1.      This is a consumer class action challenging the deceptive marketing of polyvinylchloride synthetic decking sold and distributed by the Defendants.

2.      Defendant CPG International, Inc. ("CPG") and Defendant AZEK Building Products, Inc. ("ABP") collectively ("Defendants") designed, manufactured, warranted, advertised, and sold AZEK decking to homeowners, builders, and contractors, which was installed on the property owners' structures.

3.      Plaintiffs purchased the AZEK decking material manufactured by Defendants for their homes to be used as outdoor decks and docks, applications represented by Defendants as appropriate for their AZEK decking material.

4.      The AZEK decking at issue is not a natural wood product, but a manufactured synthetic decking made of polyvinylchloride (PVC).

5.      Defendants uniformly marketed AZEK PVC decking (herein "AZEK decking") by representing that the decking only required low maintenance periodic cleaning, and was an alternative to wood and composite decking, because, unlike alternative natural wood and composite decking, AZEK decking would retain its appearance in all outdoor application.

6.      Defendants uniformly represented to consumers as follows:

   a.      That AZEK decking would maintain "Richer, Long Lasting Color."

   b.      That AZEK decking would only "weather very slightly over time and will look luxurious for years to come."

   c.      That "[B]y leaving out the wood fillers AZEK deck materials are engineered to resist stains and mold."

   d.      That "AZEK deck surfaces resist scratching and maintain their grain better than conventional wood or composite boards."

   e.      That AZEK Building Products are "Designed to last beautifully," a phrase which Defendants have trademarked.

   f.      That AZEK decking "will stand the test of time gracefully with minimal upkeep."

   g.      That consumer need only "Sit back and enjoy the lasting beauty" of AZEK decking and that its "Strong good looks are just the beginning."

   h.      That AZEK decking is "Scratch Resistant," and "Mold Resistant;"

   i.      That "[m]arket demand is moving from wood and composites to a new

2

category of low maintenance decking. With stain and scratch resistance that makes life on the deck easy and a broad palette of shades to complement any exterior. AZEK is the smart and beautiful low maintenance decking. And with over 25 years of experience in cellular PVC manufacturing, AZEK Decking is no stranger to better performance. Manufactured in the USA, AZEK has invested years of technical expertise to develop decking that .is designed to last beautifully."1

  j. "WOOD AND COMPOSITES ROT, STAIN AND FADE. AZEK DOESN'T. AZEK exterior products look so beautiful and last so long why would you ever use anything else? . . . AZEK deck is the embodiment of durability. At the end of the day all you have to do is enjoy it." (Capitalization in the original)

  7. For these reasons, Defendants charged a price for AZEK decking that was well in excess of the price charged for natural lumber materials, and competitors' materials.

  8. In their instructions to consumers on the care and maintenance of their decks, Defendants represented that the only maintenance required was to clean the deck. Defendants also represented that, because of the low maintenance, owners will save money by using AZEK decking instead of wood decking which requires significantly more upkeep than mere cleaning.

  9. Each of the Plaintiffs and Class Members saw or heard these representations from Defendants about AZEK decking prior to purchasing and installing their decking.

  10. Defendants uniformly represented to consumers that they had years of experience in the manufacture of PVC material and were in effect experts in the manufacture and use of PVC materials.

---

1 In small print at the end of a brochure concerning the color palette there appears the following "Depending on environmental conditions, AZEK Deck colors may appear to lighten over time as part of the natural weathering [process.]" Thus, Defendants actively sought to minimize the fallout from their other representations.

11.     Despite the marketing representations and warranties to the contrary, Defendants knew, or should have known:

a.     That because their decking was made of PVC, it was particularly susceptible to photo and thermal degradation, especially if exposed to sunlight or heat; to photo and thermal degradation, especially if exposed to sunlight or heat;

b.     That the chemical pathways by which PVC photo-degrades were well known in the scientific and industrial community;

c.     That the chemical process in PVC, when exposed to ultraviolet would result in color change that was progressive;

d.     That all synthetic polymers undergo UV induced discoloration;

e.     That PVC is a polymer well known for its tendency to undergo photo-degradation;

f.     That as the surface layers of PVC materials degrade, opacifiers used by Defendants, namely titanium dioxide powder, would be released and form a surface layer known as "chalking," as a direct result of exposure to solar UV radiation; and

g.     That both the tensile strength and the extensibility of rigid PVC surfaces would become embrittled with the duration of exposure to solar UV radiation making the material more susceptible to scratching and impact damage.

12.     In spite of the foregoing knowledge Defendants represented to consumers that outdoor applications in direct sunlight constituted appropriate use of their PVC decking and that consumers could reasonably expect that outdoor usage in direct sunlight would not result in the degradation of their decks, porches, and docks.

13.     Defendants knew that consumers' primary concern in purchasing AZEK PVC decking was that the decking be durable and low maintenance.

4

14.     In spite of this knowledge, AZEK PVC decking is highly susceptible to color and performance degradation as a result of exposure to solar ultraviolet radiation and heat, conditions likely to occur in the outdoor applications in which Defendants expected and anticipated their consumers to use their PVC products.

15.     Defendants also knew that as a direct result of using AZEK decking in outdoor applications exposed to solar UV radiation and heat, AZEK decking would prematurely discolor, stain, scratch, chalk, and deteriorate as a result of photo and thermal degradation.

16.     At the time of sale, AZEK PVC decking contained chemical and biochemical characteristics which result in photo and thermal degradation, deterioration and loss of appearance, durability, and eventually surface integrity. These defects reduced the effectiveness and performance of AZEK decking and rendered it unable to perform the ordinary purposes for which it was marketed and used.

17.     Indeed, Defendants knew about the defects while simultaneously placing the AZEK PVC decking in the market and continuing their marketing campaign and representations.

18.     Plaintiffs' AZEK PVC decking is discoloring, fading, chalking, and degrading, and will continue to do so. Plaintiffs' AZEK PVC decking requires significantly more maintenance than what Defendants represented. It does not and cannot maintain its color, which is neither durable nor long lasting, and is in fact failing well before the time periods advertised, marketed and warranted by Defendants.

19.     Defendants' AZEK decking provided a "Lifetime Limited Warranty" that warrants the product as being free of defects in material and workmanship. As stated above, AZEK PVC decking is made of polyvinylchloride (PVC), which is a product long known in the

5

scientific and industrial community to be highly susceptible to degradation when exposed to solar UV radiation and heat. Nevertheless, Defendants, despite knowing that their PVC products are susceptible to solar ultraviolet and thermal degradation, have denied that their PVC decking is defective and therefore have refused to provide coverage under their warranty. Defendants have refused to repair or replace Plaintiffs' decking in spite of the Lifetime Warranty, and have claimed that their warranties only cover "performance" and not "aesthetic" characteristics. This distinction does not appear in the language of the warranties, and is contrary to Defendants' numerous representations of "designing lasting beauty" and appearance durability.

20.    As a result, Plaintiffs and the Classes have suffered actual damages in that the decking purchased or installed on their property prematurely discolors, fades, chalks, scratches, stains and degrades under normal conditions of exposure to solar ultraviolet radiation and heat. Furthermore, Plaintiffs and the Classes have suffered or will suffer damages in the form of, inter alia, out-of-pocket expenditures for the replacement, and attempted remediation of AZEK PVC decking purchased or installed on their property as a direct and proximate result of the known chemical characteristics of polyvinylchloride use by the Defendants in their products.

21.    Had Plaintiffs and the Classes known the true facts regarding the inherent characteristics of PVC products manufactured, sold and distributed by Defendants, those facts would been material to their and any reasonable consumer's decisions to purchase the AZEK PVC decking at the price they paid for it.

22.    Because of the relatively small size of the typical individual Class members' claims, it is unlikely that individual Class members could afford to seek recovery on their own.

This is especially true in light of the size and resources of Defendants. A class action is, therefore, the only reasonable means by which Class members can obtain relief.

23.     As stated above, all AZEK PVC decking suffers from the propensity for photo and thermal degradation, the propensity for which is inherent in and directly attributable to its chemical composition. Despite receiving numerous complaints during the Class Period from consumers such as Plaintiffs and other Class members, Defendants have refused to effectively disclose to consumers the defective characteristics of their PVC decking in the presence of outdoor applications, and Defendants have refused to repair, replace, remediate, or refund the purchase price. Instead, Defendants have used or suggested that owners use after-market products in an attempt to re-surface the decking, which is a temporary solution at best. Defendants have also characterized the defects in AZEK PVC decking as merely "weathering," an undefined, vague, misleading, and contradictory term to consumers in light of Defendants' numerous representations that AZEK PVC decking has durability of appearance and performance.

## JURISDICTION AND VENUE

24.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d) because there are more than 100 members in one or more of the proposed classes, at least one class member is a citizen of a state different from Defendants and the amount in controversy exceeds $5,000,000.00.

25.     Defendants transact business in Illinois, advertise and market their products in Illinois, disseminated their afore-described representations and deceptions throughout Illinois, and derive a substantial income from the sale of products in Illinois.

7

26.     Venue is proper in this district pursuant to 28 U.S.C. § 1391, et seq. because a substantial part of the events or omissions giving rise to this claim occurred in the state of Illinois. Additionally, venue is appropriate for the claims arising out of Illinois' Consumer Fraud Act because the statute applies to any company engaging in any of the activities regulated by the Act within the State of Illinois.

## PARTIES

27.     Plaintiff, Tom Glodo ("Plaintiff" or "Mr. Glodo"), at all relevant times hereto, has been a citizen and resident of Pinckneyville, Illinois. From October to December 2011, Plaintiff purchased and had installed AZEK Decking at his residence in Illinois.

28.     Plaintiff, William Murdoch ("Plaintiff" or "Mr. Murdoch"), at all relevant times hereto, has been a citizen and resident of Bel Air, Maryland. Plaintiff purchased and had installed AZEK Decking at his residence in Maryland.

29.     Defendant CPG International ("CPG") is a Delaware corporation headquartered in Scranton, Pennsylvania. CPG is a manufacturer of materials for residential and commercial markets designed to replace wood, metal and other traditional materials in a variety of building applications produces for sale in Florida and nationwide. Defendant conducts substantial business in Illinois, and has sufficient contacts with Illinois or otherwise intentionally avails themselves of the laws and markets of Illinois, so as to sustain this Court's jurisdiction over Defendant.

30.     Defendant AZEK Building Products, Inc. ("ABP"), is a wholly owned subsidiary of CPG. ABP makes and markets exterior building products, including AZEK decking under the

8

AZEK Brand. ABP and CPG (collectively "Defendants") engage in the sale and distribution of AZEK decking in Illinois.

31.    Defendants hold themselves out to both the construction industry and the public at large as being knowledgeable in the design and manufacture of exterior building products and as being providers of quality building products, including the decking that is the subject of this litigation.

## CLASS ACTION ALLEGATIONS

32.    Plaintiffs bring this class action pursuant to Federal Rule of Civil Procedure 23, and case law there under on behalf of themselves and all others similarly situated.

33.    The Class which Plaintiff Glodo seeks to represent in this action is defined as follows:

> **ILLINOIS CLASS:**
> **All individuals and entities in the State of Illinois that have owned, own, or acquired homes, residences, buildings, or other structures physically located in the State of Illinois on which Azek decking is or has been installed.**
>
> **DECLARATORY RELIEF CLASS:**
> **All persons and entities that own a structure located within the United States in which Azek Decking is installed.**

34.    The Class which Plaintiff Murdoch seeks to represent in this action is defined as follows:

> **MARYLAND CLASS:**
> **All individuals and entities in the State of Maryland that have owned, own, or acquired homes, residences, buildings, or other structures physically located in the State of Maryland on which Azek decking is or has been installed.**

**DECLARATORY RELIEF CLASS:**
**All persons and entities that own a structure located within the United States in which Azek Decking is installed.**

35.    Excluded from the Classes are: (a) any Judge or Magistrate presiding over this action and members of their families; (b) AZEK, CPG, and their subsidiaries and affiliates; and (c) all persons who properly execute and file a timely request for exclusion from the Class.

36.    *Numerosity*: The Class is composed of thousands of persons geographically dispersed throughout the States of Illinois and Maryland, the joinder of whom in one action is impractical. Moreover, upon information and belief, the Class is ascertainable and identifiable from Defendants' records or identifying marks on the AZEK decking.

37.    *Commonality*: The critical questions of law and fact common to the Plaintiff Class that will materially advance the litigation are whether the AZEK decking is inherently defective, contrary to the expectations imparted by Defendants through their representations and omissions.

38.    Furthermore, other questions of law and fact common to the Class that exist as to all members of the Class and predominate over any questions affecting only individual members of the Class include the following:

a.    Whether AZEK decking has not or will not perform in accordance with the reasonable expectations of ordinary consumers;

b.    Whether Defendants knew or should have known of the defect;

c.    Whether Defendants concealed from consumers and/or failed to disclose to consumers the defect;

d.    Whether Defendants concealed from consumers and/or failed to disclose to consumers the necessary maintenance required for the decking;

e.    Whether Defendants' express warranty fails of its essential purpose;

10

f.      Whether ABP breached the express warranty given to Plaintiffs and the Class;

g.      Whether Defendants' limitations on its express warranty are unconscionable;

h.      Whether Defendants failed to properly disclaim any limitation to pay for installation of replacement decking;

i.      Whether Defendants failed to warn of potential defects in its product or omitted critical information regarding defects in its product in its marketing, sales and installation materials;

j.      Whether Defendant breached implied warranty of merchantability;

k.      Whether Plaintiff and the Class are entitled to compensatory damages, including, among other things: (i) compensation for all out-of-pocket monies expended by members of the Class for replacement of AZEK decking and/or installation costs; (ii) the failure of consideration in connection with and/or difference in value arising out of the variance between AZEK decking as warranted and the AZEK decking containing the defect; and (iii) the diminution of resale value of the residences and buildings resulting from the defect in AZEK decking;

l..     Whether Plaintiff and the Class are entitled to all costs associated with replacement of their defective AZEK decking with non-defective decking;

m.      Whether Plaintiff and the Class are entitled to restitution and/or disgorgement;

n.      Whether Plaintiff and the Class are entitled to specific performance of the warranty;

o.      Whether Plaintiff and Class Members would have purchased their structures, or whether they would have paid a lower price for their structures, had they known of the defective nature of AZEK decking used on their structures.

*Typicality*: Plaintiff's claims are typical of the claims of the members of the Class, as all such claims arise out of Defendants' conduct in designing, manufacturing, marketing, advertising, warranting and selling the defective AZEK decking and Defendants' conduct in concealing the defect in AZEK to owners, contractors, developers, and suppliers.

11

39.     *Adequate Representation*: Plaintiffs will fairly and adequately protect the interests of the members of the Class and have no interests antagonistic to those of the Class. Plaintiffs have retained counsel experienced in the prosecution of complex class actions, including but not limited to consumer class actions involving, *inter alia*, breach of warranties, product liability, and product design defects.

40.     *Predominance and Superiority*: This class action is appropriate for certification because questions of law and fact common to the members of the Class predominate over questions affecting only individual members, and a Class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable. Should individual Class members be required to bring separate actions, this Court and/or courts throughout Illinois and Maryland would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court.

## COMMON FACTUAL ALLEGATIONS

41.     Defendants have sold, directly or indirectly (through dealers and other retail outlets), thousands of AZEK decking boards nationwide and in the states of Illinois and Maryland to homeowners, developers, contractors and/or subcontractors.

42.     Defendants designed, manufactured, marketed, advertised, warranted and sold, through distributors, AZEK decking to Plaintiffs or Plaintiffs' builders, their subcontractors, and/or agents.

43.     Defendants, through a distributor, designed, manufactured, marketed, advertised, warranted and sold AZEK decking to Class Members, Class Members' builders, contractors, subcontractors, and/or agents, and AZEK was installed on Class Members' structures.

44.     Defendants provided an express warranty to Plaintiffs and Class Members and the owners of the structures on which AZEK decking was installed and/or applied. A true and accurate copy of the warranty is attached hereto as **Exhibit A** and incorporated herein by reference.

45.     In conjunction with each sale and through various forms of media, Defendants marketed, advertised and warranted that the AZEK decking was fit for the ordinary purpose for which such goods were used and was free from defects in materials and workmanship.

47.     In its materials, Defendants marketed AZEK decking as alternative to wood decking specifically because it is "low maintenance decking."

48.     The company expressly advertises that its deck boards "limit the shortfalls associated with traditional wood and composite decking so that you can enjoy your deck without worry."

49.     Defendants represented that, unlike their competitors, their deck boards are "stain resistant;" "scratch resistant;" and "split resistant."

13

50.    Moreover, Defendants expressly represent that, "Wood and Composites Rot, Stain and Fade. AZEK DOES NOT."

51.    Defendants have released numerous videos on its website and YouTube page promoting its maintenance-free attributes. In one video, for example, Defendants advertise that, "AZEK deck is the #1 best-selling brand of stain-resistant decking." Defendants further represent that, "Our unique cellular PVC formulation makes AZEK deck stain resistant against even stubborn stain-makers." Furthermore, "With a strong, dense surface, AZEK deck resists scratching from everyday things such as lawn furniture, dog claws, and general traffic wear."

52.    In another video, titled "AZEK Deck Double-Dare," the company compares its cellular PVC deck to other wood and composite deck boards. The video demonstrates how AZEK deck is stain-resistant and scratch-resistant through a series of hands-on demonstrations by an AZEK representative. http://www.azek.com/double-dare/

53.    Another version of the Double Dare Challenge states that "every day stains can be cleaned with ordinary cleaners." The video compares staining and scratching of AZEK deck vs. wood and wood composite decks.

54.    Defendants knew that Plaintiffs, Plaintiffs' builders, Plaintiffs' subcontractors, and/or agents, as well as Class Members, Class Members' builders, contractors, subcontractors, and/or agents, would rely upon Defendants' representations, marketing and warranties regarding the quality of AZEK decking.

14

55.     Plaintiffs, Plaintiffs' builders, Plaintiffs' subcontractors, and/or agents, as well as Class Members, Class Members' builders, contractors, subcontractors, and/or agents, relied upon Defendants' representations, marketing and warranties when purchasing AZEK decking.

56.     Contrary to Defendants' representations, however, AZEK is not durable, and is neither stain, scratch or split resistant. Indeed, AZEK decking, at the time of leaving Defendants' control, contains a defect because it prematurely discolors, cracks, chalks, rots, stains, spots, and deteriorates under normal conditions and natural, outdoor exposure in the structures in which it is installed. At the time of sale, AZEK decking contained design and construction defects that resulted in deterioration and loss of structural integrity. The defects reduced the effectiveness and performance of AZEK and rendered it unable to perform the ordinary purposes for which it was used.

57.     Defendants also knew that AZEK decking had a history of failures and was prone to premature wear and premature discoloration, yet Defendants failed and/or omitted to inform their distributors, their customers and the eventual owners of the product of these issues.

58.     Despite knowing of these defects in AZEK decking, Defendants have not notified distributors, contractors, owners, subcontractors or purchasers of AZEK of the defect or provided a workable solution.

59.     Furthermore, despite Defendants advertising and claims of "maintenance free" decking, Defendants instructed Plaintiffs and class members to purchase Deck Max or other similar decking-maintenance products in order to maintain the deck. This maintenance was not disclosed to Plaintiffs or other Class members prior to purchasing AZEK decking.

60.    Defendants warranted that AZEK would be free from defects in material and workmanship that (i) occur as a direct result of the manufacturing process, (ii) occur under normal use and service, (iii) occur during the warranty period, and (iv) result in blistering, peeling, flaking, cracking, splitting, cupping, or rotting.

61.    The warranty is limited to replacement of the defective AZEK product.

## FACTS SPECIFIC TO PLAINTIFFS

**Plaintiff Tom Glodo**

62.    In the fall of 2011, Plaintiff Tom Glodo purchased AZEK decking and rails and had them installed at his home in Pinckneyville, Illinois.

63.    Less than 6 months after purchasing the AZEK products, the rails on Plaintiff Glodo's deck developed extensive splitting and cracking in the coating. True and accurate copies of the e-mail correspondence and complaint form are attached hereto as **Exhibit B** and incorporated herein by reference.

64.    Plaintiff Glodo called Defendant AZEK and was told that this problem had occurred in the past, but was "rare." Defendant AZEK sent Plaintiff Glodo a piece of replacement rail, which he had installed at his own expense.

65.    Approximately 6 months later, the coating on another piece of railing also began to split and crack. Plaintiff Glodo again contacted Defendant AZEK who sent him replacements for all split and cracked rail sections. Plaintiff Glodo has not yet been able to install these sections due to the expense, which he again will have to do at his own expense. A true and accurate copy of the complaint form is attached hereto as **Exhibit C** and incorporated herein by reference.

16

66.     Plaintiff Glodo did not and could not reasonably have discovered the defects at the time of purchase or delivery, nor could he have known of the omitted material information regarding the photo and thermal degradation propensity of Defendants' decking products.

67.     Plaintiff Glodo purchased AZEK brand decking over other available products specifically because AZEK decking was represented by the Defendants as a no-maintenance decking option with durable appearance and that it would not deteriorate with outdoor exposure. If Plaintiff Glodo had known that the PVC was inherently susceptible to photo and thermal degradation due to outdoor exposure resulting in cracking of the coating, discoloration, fading, chalking, loss of stain, and scratch resistance and appearance durability, and that he would have to do maintenance beyond the limited care and maintenance Defendants had represented, he would not have purchased AZEK PVC decking at the price charged.

68.     Plaintiff Glodo is within the applicable statute of limitations for the claims presented hereunder.

69.     As a direct and proximate result of the defective decking and Defendants' deceptive practices in the marketing and sale of AZEK PVC decking, Plaintiff Glodo has suffered and will suffer damages including but not limited to the cost of replacement, remediation, and the price difference between what he paid and what he received.

70.     Plaintiff Glodo notified Defendants of the perceived problems with his AZEK decking in the manner and time frame proscribed in Defendants' express warranty.

71.     It was not until Defendants refused to correct the perceived problems or offer a reasonable means of resolving these problems that Plaintiff Glodo became aware that his AZEK decking was actually defective.

17

**Plaintiff William Murdoch**

72.     On September 14, 2009, Plaintiff William Murdoch purchased AZEK decking and had it installed at his home in Bel Air, Maryland on September 25, 2009.

73.     Prior to purchasing his AZEK decking, Plaintiff Murdoch saw and reviewed Defendants' representations and marketing as afore-described about AZEK decking in pamphlets and information sheets including the same claims and representations referenced above, and in reliance thereon, Plaintiff decided to purchase and install AZEK decking.

74.     Plaintiff Murdoch was not told by, nor did Defendants disclose, that AZEK decking is constructed of polyvinylchloride that will experience photo and thermal degradation when exposed to sunlight resulting in progressive discoloration, fading, loss of appearance durability, chalking, and loss of stain and scratch resistance which cannot be remediated and at best can only retain its appearance by periodic re-surfacing, the results of which are transient. Beginning approximately three years after purchasing the decking, Plaintiff Murdoch began to notice staining, streaking, scratches, discoloration, chalking, and fading on the deck that could not be successfully cleaned or otherwise resolved by employing the methods indicated in the care and maintenance instructions provided by Defendants.

75.     Plaintiff Murdoch contacted AZEK via e-mail on August 17, 2012, complaining of the fading, stains, and scratches in his decking and seeking relief under the warranty. On August 18, 2012, AZEK responded to Mr. Murdoch's e-mail requesting additional information and photographs. On August 21, 2012, Plaintiff Murdoch e-mailed the complaint form, proof of purchase, and photos of the decking to AZEK and received confirmation of receipt of same by

AZEK on August 22, 2012. True and accurate copies of the e-mail correspondence and complaint form are attached hereto as **Exhibit D** and incorporated herein by reference.

76.     On August 23, 2012, AZEK contacted Plaintiff Murdoch via telephone and informed him that his claim had been reviewed and that AZEK decking is not intended to protect from stains attributed to suntan lotion and bug spray (neither of which had been claimed by Mr. Murdoch). He was advised to purchase the product Deck Max online and apply it to his deck. He was advised to use the promotion code "AZEKVIP" when ordering the product.

77.     Plaintiff Murdoch did not and could not reasonably have discovered the defects at the time of purchase or delivery, nor could he have known of the omitted material information regarding the photo and thermal degradation propensity of Defendants' decking products.

78.     Plaintiff Murdoch purchased AZEK brand decking over other available products specifically because AZEK decking was represented by the Defendants as a no-maintenance decking option with durable appearance and that it would not deteriorate with outdoor exposure. If Plaintiff Murdoch had known the PVC was inherently susceptible to photo and thermal degradation due to outdoor exposure resulting in discoloration, fading, chalking, loss of stain and scratch resistance and appearance durability, and that he would have to do re-surfacing maintenance beyond the limited care and maintenance Defendants had represented, he would not have purchased AZEK PVC decking at the price charged.

79.     Plaintiff Murdoch is within the applicable statute of limitations for the claims presented hereunder.

80.     As a direct and proximate result of the defective decking and Defendants' deceptive practices in the marketing and sale of AZEK PVC decking, Plaintiff Murdoch has

suffered and will suffer damages including but not limited to the cost of replacement, remediation, and the price difference between what he paid and what he received.

81.    Plaintiff Murdoch notified Defendants of the perceived problems with his AZEK decking in the manner and time frame proscribed in Defendants' express warranty.

82.    It was not until Defendants refused to correct the perceived problems or offer a reasonable means of resolving these problems that Plaintiff Murdoch became aware that his AZEK decking was actually defective.

## ESTOPPEL FROM PLEADING THE STATUTE OF LIMITATIONS

83.    Plaintiff Glodo is within the applicable statute of limitations for the claims presented hereunder because Plaintiff Glodo did not discover the defect, and could not reasonably have discovered the defect, until autumn/winter 2011.

84.    Plaintiff Murdoch is within the applicable statute of limitations for the claims presented hereunder because Plaintiff Murdoch did not discover the defect, and could not reasonably have discovered the defect, until August 2012.

85.    Plaintiffs have brought the warranty claims prior to the expiration of the warranty. Plaintiffs also assert that this action has been filed within all applicable time frames from the date of initial use or consumption of AZEK decking.

86.    Defendants committed affirmative acts of concealment related to these defects by making the representations, warranties, and marketing claims described supra, to Plaintiffs, the Classes, and the public at large, and omitting material information known to them concerning the propensity of its PVC decking to photo and thermal degradation when exposed to sunlight.

20

87.     Defendants expected and anticipated that Plaintiffs and Class Members would rely upon their representations and omissions in their decisions to purchase and install AZEK PVC decking on their structures.

88.     Defendants issued a "Life Time Warranty" that their product was free of defects in material and workmanship when they knew or should have known that their PVC decking was susceptible to photo and thermal degradation, and that such degradation was going to occur in all the outdoor uses and applications. Defendants also knew that their PVC decking would not maintain its appearance durability but would fade, discolor, and would release its opacifier material in the form of chalking, all as a result of exposure to sunlight and heat, normal and anticipated conditions of outdoor applications. Defendants knew that although their product was highly susceptible to photo and thermal degradation, they had no intention of honoring their warranty for those consequences. Defendants knew that their PVC decking would maintain neither a durable appearance nor surface integrity in the presence of sunlight, and as a result would in fact require repeated and frequent re-surfacing to maintain its appearance durability, yet Defendants omitted these material facts from the public and consumers. When warranty applications were made to them for the anticipated results of photo and thermal degradation, Defendants denied such warranty claims falsely asserting that chemical degradations were mere "aesthetic issues" and not a "performance" issue even though that distinction is provided neither in their warranty nor in any of the representations made by the Defendants to consumers.

89.     Defendants had a duty to disclose that AZEK PVC decking was defective, unreliable and inherently flawed in its design or manufacture.

**COUNT I**
**VIOLATIONS OF THE MANGUSSON MOSS ACT**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of All Plaintiffs and Classes)**

90.     Plaintiff, individually, and on behalf of all others similarly situated, adopts and incorporates by reference all allegations contained in paragraphs 1 through 87 as though fully set forth herein.

91.     The Magnuson-Moss Consumer Products Liability Act, 15 U.S.C §2301, et seq. ("MMCPWA" or the "Act") provides a private right of action to purchasers of consumer products against retailers who, *inter alia*, fail to comply with the terms of a written warranty, express warranty and/or implied warranty. As demonstrated above, Defendants have failed to comply with the terms of their warranties, written, express and implied, with regard to the decking that they advertised, distributed, marketed and/or sold.

92.     Azek products are consumer products, as the term is defined in 15 U.S.C. § 2301(a).

93.     Defendant is a warrantor, as that term is defined in 15 U.S.C. § 2301(5).

94.     The Plaintiffs and each member of the Classes are consumers, as that term is defined in 15 U.S.C. § 2301(3).

95.     The MMWA provides a cause of action for breach of warranty or other violations of the Act. 15 U.S.C. § 2310(d)(1). Defendant has also breached its warranty to provide goods that are free from material defects in workmanship and materials. It also has breached its implied warranty of merchantability, which it cannot disclaim under the MMWA, 15 U.S.C. § 2308(a)(1), by failing to provide merchantable goods. Plaintiffs have suffered damages as a

result of Defendant's breaches of express and implied warranties as set forth herein; thus, this action lies. 15 U.S.C. § 2310(d)(1)-(2).

**COUNT II**
**BREACH OF EXPRESS WARRANTY**
(On Behalf of Plaintiffs and all Classes)

96.     Plaintiffs, individually, and on behalf of all others similarly situated, adopt and incorporate by reference all allegations contained in paragraphs 1 through 87 as though fully set forth herein.

97.     As set forth in Exhibit A, Defendants expressly warranted, for the lifetime of the product, that AZEK PVC decking would be free from defects in material and workmanship.

98.     Defendants also extended express warranting to consumers, including Plaintiffs and the Classes, by way of product descriptions and representations as to product qualities and characteristics made in sales literature at retailers, on their website, and via advertisements, among other methods, including the representations regarding appearance durability as described above.

99.     Defendants represent in their warranty that "AZEK Products are intended for decks, boardwalks and piers," all applications of outdoor exposure to sunlight, ultraviolet and thermal radiation. In spite of this representation of the suitability of outdoor applications, AZEK PVC decking does not perform as represented because its chemical composition results in premature discoloration, fading, chalking, loss of scratch and stain resistance, and loss of appearance durability due to ultraviolet and thermal radiation. This defect is due to fundamental chemical characteristics of the material used and was known by the Defendants

23

prior to the sale and distribution of the AZEK PVC decking to Plaintiffs and the Classes. Accordingly, the AZEK decking purchased by Plaintiffs and the Classes was not free from defects in material and workmanship.

100.   Defendants' express lifetime warranty provides that they will repair or replace the defective product or refund the purchase price.

101.   Defendants have breached the written warranty, as set forth above, by failing to replace the defective product or refund the purchase price.

102.   Plaintiffs did not negotiate or bargain for the terms of the express warranty provisions and any purported limitations contained therein. Upon information and belief, the distributors, contractors, and other customers of Defendants did not and could not negotiate or bargain for the terms of the express warranty provisions and any purported limitations contained therein. Instead, Defendants stood in a position of domination and control over the terms.

103.   Under these circumstances, Defendants' purported exclusions or limitations of liability and remedies are unconscionable and invalid.

104.   At the time that Defendants extended these express warranties to Plaintiffs and the Classes, Defendants knew that AZEK PVC decking would degrade in the presence of sunlight and heat. Nevertheless, Defendants continued to place the defective product on the market and failed and omitted to inform their distributors, customers, Plaintiffs and Class Members, on whose structures AZEK PVC decking was installed, of these inherent chemical characteristics.

24

105.    Defendants have received sufficient and timely notice of the breaches of warranty alleged herein. Despite this notice and Defendants' knowledge of the defect in AZEK PVC decking, Defendants have failed and refused to honor their express warranty.

106.    Defendants' failure to remedy the defective AZEK decking and all associated damages constitutes a breach of express warranty.

107.    The foregoing breaches of express warranty at issue were substantial factors in causing damages to Plaintiffs and the Classes.

108.    As a result of the foregoing, Plaintiffs and the members of the Classes have suffered damages (in the form of, inter alia, out-of-pocket expenditures for the replacement of AZEK PVC decking or installation of replacements) that were directly and proximately caused by the defective design and manufacture of AZEK PVC decking. Moreover, if Plaintiffs and the members of the Classes had known the true facts about the defects in AZEK PVC decking, they would have considered that information material in their decisions to purchase AZEK PVC decking.

109.    Plaintiffs and members of the Classes are entitled to the full remedies provided under Article 2 of the Uniform Commercial Code as adopted by Illinois and Maryland, as well as all other applicable remedies.

<u>**COUNT III**</u>
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
(On Behalf of Plaintiffs and All Classes)

110.    Plaintiffs, individually, and on behalf of all others similarly situated, adopt and incorporate by reference all allegations contained in paragraphs 1 through 87 as though fully set forth herein.

25

111.    Defendants are merchants who sold decking products to Plaintiffs and the Classes for residential use.

112.    Defendants impliedly represented and warranted that AZEK PVC Decking was free of defects, was of good and merchantable quality, fit for its intended purpose and fit for the ordinary purposes for which such goods are used.

113.    In fact, Defendants have sold, directly or indirectly (through distributors and other retail outlets), thousands of board feet of AZEK decks in the states of Illinois and Maryland to homeowners, developers, contractors or subcontractors.

114.    Through distributors, Defendants designed, manufactured, marketed, advertised, warranted and sold AZEK PVC decking to Plaintiffs or Plaintiffs' builders, contractors, subcontractors or agents.

115.    Defendants, generally through distributors, designed, manufactured, marketed, advertised, warranted and sold AZEK PVC decking to Class Members, Class Members' builders, contractors, subcontractors or agents, and AZEK PVC decking was installed on Class Members' structures.

116.    Plaintiffs and the Class Members were in privity with Defendants because (1) they purchased their AZEK PVC decking from an actual or apparent agent of Defendants, and (2) have a contractual relationship stemming from Defendants' lifetime warranty provided in conjunction with the purchase of the AZEK PVC decking.

117.    Any limitation, or attempt at limitation, on the implied warranty of merchantability is unconscionable under all of the circumstances, and is unenforceable.

118.    Defendants breached the aforementioned representations and implied warranties, as the AZEK PVC decking contains and suffers from defects because its chemical characteristics result in premature discoloration, fading, chalking, loss of scratch and stain resistance, and loss of appearance durability, and otherwise degrade when exposed to sunlight and heat under all outdoor exposures in the structures in which it is installed. These defects are due to fundamental chemical composition of the PVC decking which was known to Defendants prior to its manufacture, sale and distribution of the AZEK PVC decking at the time it left Defendants' control.

119.    These defects rendered the decking unsuitable for the ordinary purposes for which it was used and purchased.

120.    Plaintiffs provided notice to Defendants of the defects in their AZEK decking and requested that Defendants repair the defects. In addition, members of the Classes, by virtue of claims for replacement made pursuant to the express warranties, also notified Defendants of the defects in their AZEK PVC decking. By virtue of the foregoing, Defendants have received notice of the breach of the warranties.

121.    As a result of the foregoing, Plaintiffs and the members of the Classes have suffered damages (in the form of, inter alia, out-of-pocket expenditures for replacement of AZEK PVC decking or installation of replacement decking) that were directly and proximately caused by the defective AZEK PVC decking. Moreover, if Plaintiffs and the members of the Classes had known the true facts about the defects, they would not have had AZEK PVC decking installed in their residences.

27

122.    Plaintiffs and members of the Classes are entitled to the full remedies provided under Article 2 of the Uniform Commercial Code as adopted by Illinois and Maryland, as well as all other applicable remedies.

<u>COUNT IV</u>
**VIOLATION OF ILLINOIS' CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT 815 ILCS 505/1 to 515/12**
(On Behalf of Illinois Subclass Only)

123.    Plaintiff Tom Glodo, individually, and on behalf of all others similarly situated, adopts and incorporates by reference all allegations contained in paragraphs 1 through 87 as though fully set forth herein.

124.    Defendants are manufacturers, marketers, sellers, or distributors of AZEK decking.

125.    The conduct described above and throughout this Complaint took place within the State of Illinois and constitutes unfair business practices in violation of Illinois' Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 5015/1 to 515/12 (hereinafter, "ICFA").

126.    The ICFA applies to the claims of all the Illinois Subclass members because the conduct which constitutes violations of the ICFA by the Defendants occurred within the State of Illinois.

127.    Defendants' acts and practices violate the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1 *et seq.* ("ICFA"). The Illinois Consumer Fraud Act provides:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such

material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act," approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

815 ILCS 505/2.

128.   Through brochures, advertising, marketing, and sales of AZEK decking, Defendants misrepresented the quality, durability, and needed maintenance of AZEK decking, and made omissions of material fact.

129.   Defendants failed to advise Plaintiff and other member of the Illinois Class that AZEK decking is defective and not fit for use.

130.   Because of their misrepresentations and non-disclosure of material facts in regard to the quality and durability of AZEK decking, as alleged above, Defendants deceived Plaintiff and other members of the Illinois Class.

131.   The unfair and deceptive trade acts and practices in regard to the AZEK decking have directly, foreseeably, and proximately caused actual damages to Plaintiff and Illinois Class members. Plaintiff and other Class members are damaged in that, contrary to Defendants' previous representations, AZEK decking is defective and not fit for use. Additionally, Defendants' remedy is inadequate, as it requires consumers to expend considerable time and money repairing the defective AZEK decking at their own expense.

132.   In violation of the ICFA, Defendants employed fraud, deception, false promise, misrepresentation and the knowing concealment, suppression, or omission of material facts in their sale and advertisement of AZEK decking in the State of Illinois.

133.    Specifically, Defendants made the following false and deceptive representations in its marketing materials:

    a.    That AZEK decking would maintain "Richer, Long Lasting Color."

    b.    That AZEK decking would only "weather very slightly over time and will look luxurious for years to come."

    c.    That "[B]y leaving out the wood fillers AZEK deck materials are engineered to resist stains and mold."

    d.    That "AZEK deck surfaces resist scratching and maintain their grain better than conventional wood or composite boards."

    e.    That AZEK Building Products are "Designed to last beautifully," a phrase which Defendants have trademarked.

    f.    That AZEK decking "will stand the test of time gracefully with minimal upkeep."

    g.    That consumer need only "Sit back and enjoy the lasting beauty" of AZEK decking and that its "Strong good looks are just the beginning."

    h.    That AZEK decking is "Scratch Resistant," and "Mold Resistant;"

    i.    That "[m]arket demand is moving from wood and composites to a new category of low maintenance decking. With stain and scratch resistance that makes life on the deck easy and a broad palette of shades to complement any exterior. AZEK is the smart and beautiful low maintenance decking. And with over 25 years of experience in cellular PVC manufacturing, AZEK Decking is no stranger to better performance. Manufactured in the USA, AZEK has invested years of technical expertise to develop decking that is designed to last beautifully."

134.    Contrary to Defendants' representations, AZEK decking is not more durable than wood and composites, does not "stand the test of time gracefully with minimal upkeep", and is not resistant to scratches, stains, and fading.

30

135.   Defendants either knew, or should have known, that AZEK decking was defectively designed and/or manufactured and would allow stains, scratching, and fading, such that the decking was not as represented to be by the Defendants as alleged herein.

136.   Upon information and belief, at the time that AZEK decking left their control, Defendants knew that AZEK decking contained a defect because it succumbs to staining, scratching, and fading under normal conditions and natural, outdoor exposure.

137.   Despite the foregoing, Defendants failed to inform or educate distributors, Plaintiff, Plaintiff's contractor, subcontractors and/or agents, as well as Class Members, Class Members' contractors, subcontractors and/or agents about the defects and deficiencies regarding AZEK decking at the time of sale. Defendants were in a superior position to know, and actually did know, the true facts about the hidden defects of AZEK decking. Defendants' acts and omissions, detailed herein, had the tendency to deceive distributors, Plaintiff, Plaintiff's builder, subcontractors and/or agents, as well as Class Members, Class Members' builders, subcontractors and/or agents and members of the Class, and did deceive Plaintiff and Class Members to their detriment.

138.   Defendants knew that AZEK decking was defective and would stain, scratch, and fade prematurely. Defendants also knew that their warranty failed its essential purpose and would not make Plaintiff or Class Members whole, and breached its warranty by failing to pay for 100% of the labor costs associated with repair and replacement of AZEK decking on Plaintiff's and Class Members' Structures. Because of these facts, deception or unfairness was present at both the time of contract formation and at the time of Defendants' breach of warranty.

139.     As a direct and proximate cause of the violation of the ICFA, described above, Plaintiff and members of the Class have been injured in that they have purchased the defective AZEK decking based on nondisclosure of material facts alleged above. Had Plaintiff and Class Members known the defective nature of the AZEK decking used on their structures, they would not have purchased it, or would have paid a lower price for their structures.

140.     Defendants used unfair methods of competition and unfair or deceptive acts or practices in conducting their businesses within the meaning of the ICFA. This unlawful conduct is continuing, with no indication that Defendants will cease.

141.     Defendants acted willfully, knowingly, intentionally, unconscionably and with reckless indifference when it committed these acts of consumer fraud.

142.     As a direct and proximate result of Defendants' unfair and deceptive acts and practices, Plaintiff and the other members of the Class will suffer damages, which include, without limitation, costs to inspect, repair or replace their AZEK decking, in an amount to be determined at trial.

143.     As a result of the acts of consumer fraud described above, Plaintiff and the Subclass have suffered ascertainable loss in the form of actual damages that include the purchase price of the products for which Defendants are liable to the Plaintiff and the Subclass for treble their ascertainable losses, plus attorneys' fees and costs, along with equitable relief prayed for herein in this Complaint.

## COUNT V
### VIOLATION OF MARYLAND'S CONSUMER PROTECTION ACT
#### Md. Code Ann., Com. Law §§ 13–101 *et seq*
(On Behalf of Plaintiff William Murdoch and Maryland Subclass Only)

144.　Plaintiff William Murdoch, individually, and on behalf of all others similarly situated, adopts and incorporates by reference all allegations contained in paragraphs 1 through 87 as though fully set forth herein.

145.　Defendants are manufacturers, marketers, sellers, or distributors of AZEK decking.

146.　The conduct described above and throughout this Complaint took place within the State of Maryland and constitutes unfair business practices in violation of Maryland's Consumer Protection Act, Md. Code Ann., Com. Law §§ 13-101 *et seq*. (hereinafter, "MCPA").

147.　The MCPA applies to the claims of all the Maryland Subclass members because the conduct which constitutes violations of the MCPA by the Defendants occurred within the State of Maryland.

The MCPA prohibits "unfair or deceptive trade practices", including:

(1) False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers;

(2) Representation that:

(i) Consumer goods, consumer realty, or consumer services have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they do not have;

Md. Code Ann., Com. Law § 13-101

148.    Through brochures, advertising, marketing, and sales of AZEK decking, Defendants misrepresented the quality, durability, and needed maintenance of AZEK decking, and made omissions of material fact.

149.    Defendants failed to advise Plaintiff and other member of the Maryland Class that AZEK decking is defective and not fit for use.

150.    Because of their misrepresentations and non-disclosure of material facts in regard to the quality and durability of AZEK decking, as alleged above, Defendants deceived Plaintiff and other members of the Maryland Class.

151.    The unfair and deceptive trade acts and practices in regard to the AZEK decking have directly, foreseeably, and proximately caused actual damages to Plaintiff and Maryland Class members. Plaintiff and other Class members are damaged in that, contrary to Defendants' previous representations, AZEK decking is defective and not fit for use. Additionally, Defendants' remedy is inadequate, as it requires consumers to expend considerable time and money repairing the defective AZEK decking at their own expense.

152.    In violation of the MCPA, Defendants employed fraud, deception, false promise, misrepresentation and the knowing concealment, suppression, or omission of material facts in their sale and advertisement of AZEK decking in the State of Maryland.

153.    Specifically, Defendants made the following false and deceptive representations in its marketing materials:

     a.     That AZEK decking would maintain "Richer, Long Lasting Color."

     b.     That AZEK decking would only "weather very slightly over time and will look luxurious for years to come."

    c.       That "[B]y leaving out the wood fillers AZEK deck materials are engineered to resist stains and mold."

    d.       That "AZEK deck surfaces resist scratching and maintain their grain better than conventional wood or composite boards."

    e.       That AZEK Building Products are "Designed to last beautifully," a phrase which Defendants have trademarked.

    f.       That AZEK decking "will stand the test of time gracefully with minimal upkeep."

    g.       That consumer need only "Sit back and enjoy the lasting beauty" of AZEK decking and that its "Strong good looks are just the beginning."

    h.       That AZEK decking is "Scratch Resistant," and "Mold Resistant;"

    i.       That "[m]arket demand is moving from wood and composites to a new category of low maintenance decking. With stain and scratch resistance that makes life on the deck easy and a broad palette of shades to complement any exterior. AZEK is the smart and beautiful low maintenance decking. And with over 25 years of experience in cellular PVC manufacturing, AZEK Decking is no stranger to better performance. Manufactured in the USA, AZEK has invested years of technical expertise to develop decking that is designed to last beautifully."

    j.       "WOOD AND COMPOSITES ROT, STAIN AND FADE. AZEK DOESN'T. AZEK exterior products look so beautiful and last so long why would you ever use anything else? . . . AZEK deck is the embodiment of durability. At the end of the day all you have to do is enjoy it." (Capitalization in the original)

154.    Contrary to Defendants' representations, AZEK decking is not more durable than wood and composites, does not "stand the test of time gracefully with minimal upkeep", and is not resistant to scratches, stains, and fading.

155.    Defendants either knew, or should have known, that AZEK decking was defectively designed and/or manufactured and would allow stains, scratching, and fading, such that the decking was not as represented to be by the Defendants as alleged herein.

156.    Upon information and belief, at the time that AZEK decking left their control, Defendants knew that AZEK decking contained a defect because it succumbs to staining, scratching, and fading under normal conditions and natural, outdoor exposure.

157.    Despite the foregoing, Defendants failed to inform or educate distributors, Plaintiff, Plaintiff's contractor, subcontractors and/or agents, as well as Class Members, Class Members' contractors, subcontractors and/or agents about the defects and deficiencies regarding AZEK decking at the time of sale. Defendants were in a superior position to know, and actually did know, the true facts about the hidden defects of AZEK decking. Defendants' acts and omissions, detailed herein, had the tendency to deceive distributors, Plaintiff, Plaintiff's builder, subcontractors and/or agents, as well as Class Members, Class Members' builders, subcontractors and/or agents and members of the Class, and did deceive Plaintiff and Class Members to their detriment.

158.    Defendants knew that AZEK decking was defective and would stain, scratch, and fade prematurely. Defendants also knew that their warranty failed its essential purpose and would not make Plaintiff or Class Members whole, and breached its warranty by failing to pay for 100% of the labor costs associated with repair and replacement of AZEK decking on Plaintiff's and Class Members' Structures. Because of these facts, deception or unfairness was present at both the time of contract formation and at the time of Defendants' breach of warranty.

159.    As a direct and proximate cause of the violation of the MCPA, described above, Plaintiff and members of the Class have been injured in that they have purchased the defective AZEK decking based on nondisclosure of material facts alleged above. Had Plaintiff and Class

Members known the defective nature of the AZEK decking used on their structures, they would not have purchased it, or would have paid a lower price for their structures.

160.    Defendants used unfair methods of competition and unfair or deceptive acts or practices in conducting their businesses within the meaning of the MCPA. This unlawful conduct is continuing, with no indication that Defendants will cease.

161.    Defendants acted willfully, knowingly, intentionally, unconscionably and with reckless indifference when it committed these acts of consumer fraud.

162.    As a direct and proximate result of Defendants' unfair and deceptive acts and practices, Plaintiff and the other members of the Class will suffer damages, which include, without limitation, costs to inspect, repair or replace their AZEK decking, in an amount to be determined at trial.

163.    As a result of the acts of consumer fraud described above, Plaintiff and the Subclass have suffered ascertainable loss in the form of actual damages that include the purchase price of the products for which Defendants are liable to the Plaintiff and the Subclass for treble their ascertainable losses, plus attorneys' fees and costs, along with equitable relief prayed for herein in this Complaint.

**COUNT VI**
**DECLARATORY RELIEF PURSUANT TO 28 U.S.C. § 2201**
(On Behalf of Plaintiffs and All Classes Defined Herein)

164.    Plaintiffs, individually, and on behalf of all others similarly situated, adopt and incorporate by reference all allegations contained in paragraphs 1 through 87 as though fully set forth herein.

165.    Defendants have acted or refused to act on grounds that apply generally to the Classes, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Classes as a whole within the meaning of Fed. R. Civ. P. 23.

166.    There is an actual controversy between Defendants, Plaintiffs, and the Classes concerning the validity of the Defendants' limitations contained in their Lifetime Limited Warranty issued by Defendants, and in particular Defendants' rejection of warranty claims related to photo and thermal degradation of its AZEK PVC decking. A copy of Defendants' Lifetime Limited Warranty is attached as Exhibit A.

167.    Pursuant to 28 U.S.C. § 2201 this Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

168.    Defendants have wrongfully denied warranty claims as unwarranted "aesthetic" defects despite this distinction not appearing in the warranty, and in spite of the root cause of defects being directly attributable to Defendants' use of PVC in their outdoor decking materials.

169.    Accordingly, Plaintiffs seek a declaration that the Defendants' use of PVC is a defect in material used in their AZEK decking, and covered by Defendants' Lifetime Limited Warranty. In particular, Plaintiffs and the Classes seek the following declarations:

a.    The Court finds that all Defendants' AZEK PVC Decking is defective in material because the polyvinylchloride used in the decking is susceptible to chemical degradation due to ultraviolet and thermal exposure, which exposure appertains to all outdoor applications of the Defendants' product.

b.    The Court finds that Defendants knew their PVC decking products would experience photo and thermal degradation as a result of

exposure to sunlight and heat, and that these exposures were highly likely to occur in all outdoor applications of their products.

c.    The Court finds that Defendants intended the purchasers of their products to use their PVC decking for decks, boardwalks, and piers when they knew, but did not disclose that such intended uses would result in chemical degradation of the products before the expiration of their Lifetime Limited Warranty.

d.    The Court finds that Defendants uniformly represented to purchasers of their PVC products that their appearance was durable and long lasting when in fact Defendants knew this to be false, and knew that the appearance of their PVC products could not be restored to their pre-degradation appearance.

e.    The Court finds that Defendants' representation that their PVC decking products would have durable and long lasting appearance characteristics and would not be subject to chemical degradation of those characteristics when used in the matter Defendants had recommended, and would not require maintenance to retain their appearance were express warranties of product characteristics and performance subject to all the remedies otherwise provided for products defective in material and workmanship contained in Defendants' Lifetime Limited Warranty.

f.    The Court finds that Defendants have wrongfully denied warranty benefits, under their express warranty, to purchasers and owners of AZEK PVC decking, and that all applications for warranty coverage for photo and thermal degradation are to be honored by Defendants with all appropriate warranty benefits provided to otherwise eligible warranty applicants.

g.    The Court finds that Defendants' PVC decking products are subject to chemical degradation as a result of exposure to ultraviolet and thermal radiation and that the results of this degradation, including discoloration, fading, chalking, loss of appearance durability and loss of scratching and staining resistance, and that no maintenance will remediate the consequences of this chemical degradation are material facts which Defendants must disclose to all persons or entities currently possessing contractual rights under Defendants' Lifetime Limited Warranty.

h.    The Court declares that Defendants shall re-audit and reassess all prior warranty claims, including claims previously denied in whole or in part,

39

where the denial was based upon Defendants' assertion that claims of fading, discoloration, chalking, loss of appearance durability, loss of scratch or stain resistance, or other symptoms of photo and/or thermal degradation for outdoor exposure were not warrantable "aesthetic" defects.

i.  The Court declares that Defendants shall establish an inspection program and protocol to be communicated to all purchasers and owners of AZEK PVC decking which will require Defendants to determine whether their AZEK decking products have experienced photo or thermal degradation due to exposure to ultraviolet or thermal radiation. All disputes over warranty coverage shall be adjudicated by a Special master appointed by the Court or agreed to by the parties.

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for a judgment against Defendants as follows:

A.  Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and/or (b)(3), and certifying the Declaratory Relief Class defined herein;

B.  Designating Plaintiffs as representatives of the Class and their counsel as Class counsel;

C.  Entering judgment in favor or Plaintiffs and the Class and against Defendants for all compensatory, individual and class damages, and all other damages permitted by law, and for attorneys' fees and costs, including interest thereon;

D.  Compelling Defendants to establish a program to inspect, repair or replace all AZEK PVC decking that has manifest photo or thermal degradation as a result of exposure to ultraviolet or thermal radiation;

F.    Compelling Defendants to establish a program to reimburse their warranty claims previously denied or paid in part, reimburse Plaintiffs and the Class Members who have had to pay to repair or replace defective AZEK PVC decking, or paid the cost of remediation;

G.    For each of the Declarations as afore described; and

H.    Granting such further relief as the Court deems just.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims so triable.

DATED: April 25, 2013                    Respectfully submitted,


                                         s/Eric D. Holland
                                         Eric D. Holland
                                         R. Seth Crompton
                                         **HOLLAND, GROVES, SCHNELLER**
                                         **& STOLZE, LLC**
                                         300 N Tucker, Suite 801
                                         St. Louis, Missouri 63101
                                         Telephone: 314.241.8111
                                         Facsimile: 314.241.5554
                                         eholland@allfela.com
                                         scrompton@allfela.com

                                         Jordan L. Chaikin
                                         **PARKER & WAICHMAN LLP**
                                         3301 Bonita Beach Road, Suite 101
                                         Bonita Springs, Florida  34134
                                         Telephone: (239) 390-1000
                                         Facsimile: (239) 390-0055
                                         jchaikin@yourlawyer.com

41

John R. Climaco
John A. Peca
**CLIMACO, WILCOX, PECA,**
  **TARANTINO & GAROFOLI CO., L.P.A.**
55 Public Square, Suite 1950
Cleveland, Ohio  44113
Telephone: (216) 621-8484
Facsimile: (216) 771-1632
jrclim@climacolaw.com
japeca@climacolaw.com

Richard J. Arsenault
Douglas E. Rushton
**NEBLETT, BEARD & ARSENAULT**
2220 Bonaventure Court
P.O. Box 1190
Alexandria, Louisiana  71309
Telephone: (216) 621-8484
Facsimile: (216)771-1632
rarsenault@nbalawfirm.com
drushton@nbalawfirm.com

Charles E. Schaffer
**LEVIN, FISHBEIN, SEDRAN & BERMAN**
510 Walnut Street, Suite 500
Philadelphia, Pennsylvania  19106
Telephone: (215) 592-1500
Facsimile: (215) 592-4663
cschaffer@lfsblaw.com

Mark J. Geragos
Shelley Kaufman
Ben Meiselas
**GERAGOS & GERAGOS**
Engine Co. No. 28
644 South Figueroa Street
Los Angeles, CA 90017
213-625-3900
213-625-1600 – fax
mark@geragos.com
kaufman@geragos.com
meiselas@geragos.com

42